BENSEND, Appellant, vs. HARPER, Respondent.

*December 2, 1957—January 7, 1958.*

For the appellant there was a brief by *Frank L. Morrow* and *James E. Garvey,* both of Eau Claire, and oral argument by *Mr. Garvey.*

For the respondent there was a brief and oral argument by *E. B. Bundy* of Eau Claire.

BROADFOOT, J. The collision from which this action arose occurred on September 9, 1954, about 11 a. m. Plaintiff was proceeding in an easterly direction on U. S. Highway 12, a few miles east of the village of Fall Creek in Eau Claire county. He intended to make a left turn and proceed in a northerly direction on County Trunk Highway HH. He testified that when he was about 300 feet west of the intersection of the two highways he reduced his speed and turned to the right so that his right wheels were on the shoulder of the highway. U. S. Highway 12 was paved with 20 feet of concrete and had gravel shoulders about six feet wide on each side. Plaintiff testified that he reduced his speed and turned right to enable three vehicles following him to pass before he made his left turn. He testified that two trucks and a car passed him. When 200 feet from the intersection he turned on his directional lights signaling a left turn. After the following vehicles had passed him he resumed his position entirely on the concrete when 60 to 80 feet west of the intersection. After the following vehicles had passed him, he testified, he could see the defendant's car coming over a rise 700 feet to the east; that he made and completed his left turn and that he was entirely out of the U. S. highway and on the county trunk highway when he was struck in the right side by the defendant's car.

The defendant testified that only one vehicle, a truck, passed him going east but that this vehicle obstructed his vision of plaintiff's car for a considerable distance. He stated that he first saw plaintiff's car when he was about 200 feet east of the intersection. At that time plaintiff had

started his left turn and his car was headed in a northerly direction; that the plaintiff was driving very slowly and that as his front bumper crossed the center line of the highway he appeared to slow down. He thought plaintiff was going to stop and he turned somewhat to the right to go around him. He remembers nothing more except the collision itself.

The only other witness was a traffic officer who appeared sometime after the accident, who took several photographs and made certain measurements. The traffic officer located the point of impact at 17 feet north of the concrete paving on U. S. Highway 12 and within the limits of the county trunk highway. After the impact the defendant's car was located about nine feet north of the north edge of the concrete on Highway 12 and the car was facing southeast. The plaintiff's car after the accident was 30 feet west of the west edge of the county trunk highway and 26 feet north of the north edge of the pavement on Highway 12, facing southwest. The officer further testified that the right wheels of defendant's car left the concrete portion of the highway 84 feet from the point of impact. The left front wheels of the defendant's car left the north edge of the concrete a short distance east of the east edge of the county trunk highway. It was a cloudy day and there had been intermittent rain. Defendant testified that his windshield wipers were going. Although the rain had ceased at the moment, passing vehicles threw water upon the windshield. The surface of the north shoulder had been softened by the rain and because of that the tire marks showed on the shoulder. The officer could not tell whether there were skid marks or not. He could find no skid marks on the pavement.

At the conclusion of the testimony and while the attorneys were conferring with the judge on the form of the verdict, plaintiff asked leave to amend his complaint to conform to the proofs and asked that a question be included in the special verdict inquiring as to the defendant's failure

to yield the right of way. This allegation of negligence had not been pleaded. The trial court indicated that the application was not timely made, that the verdict had been prepared and that he would deny the request. Plaintiff then indicated he would be satisfied if the court instructed as to the provisions of sec. 85.18 (1), Stats. 1953, which provided that the driver of a vehicle approaching but not having entered an intersection shall yield the right of way to vehicles already within the intersection and turning therein to the left, if a driver of the vehicle turning left has given visible signal of intention to make a left turn. The plaintiff intimated that if the instruction was given that would be satisfactory. He now complains that error was committed because the right-of-way question was not submitted to the jury. Under the circumstances we can find no error.

The next assignment of error by the plaintiff is that the court did not instruct the jury as to the relationship of speed to management and control as requested by the plaintiff. The plaintiff did request an instruction that if the jury found the defendant was negligent with respect to speed that excessive speed is an efficient cause or substantial factor in producing a collision when such speed prevents or retards the operator of such vehicle, after he sees danger, from slowing down or stopping in time to avoid the collision. The jury did find that the defendant was negligent with respect to his rate of speed and that such negligence was causal. The requested instruction, which was not given in the form requested, bore no relationship to the question of speed being a factor in management and control. We find no error in the trial court's refusal to give the requested instruction. Its failure to do so was not prejudicial in view of the jury's findings.

The jury returned a verdict in which four separate jurors had noted dissents to various questions. In its original

instructions the trial court had not instructed fully on the subject of five-sixths verdicts. Upon examination the trial court discovered that the verdict was defective and then proceeded to instruct as to the five-sixths verdict and suggested that the jury retire and give further consideration to the questions with those instructions in mind. The court made it clear that it was not indicating what changes, if any, might be made, and that perhaps they could not change anything from the form in which it was returned. The jury deliberated further and returned the verdict with all dissents eliminated.

The plaintiff contends that the manner in which the trial court handled the situation was prejudicial to him and that the error requires a new trial. The plaintiff cites several cases where new trials were ordered where the trial court instructed the jury that ten jurors must agree to all questions and subdivisions thereof. In the instructions given here there was no such compulsory language used. Reading the instructions as a whole, we cannot find that the trial court insisted that ten jurors must agree on all questions to support a valid verdict, and taken as a whole we do not find that the instructions were prejudicial.

*By the Court.*—Judgment affirmed.